UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FTF LENDING, LLC,
a Delaware limited liability company
10 East 23rd Street, Floor 5
New York, New York 10010

        Plaintiff

vs.

SOUTHWEST DEVELOPMENTS, INC.,
a Florida corporation
Attn: Philip R. Maiorca, Registered Agent
2180 Immokalee Road, Suite 212
Naples, Florida 34110

-and-

JASON MELOCHE,
*aka* JASON A. MELOCHE,
an individual and citizen of Canada
1586 Glenhill Cres
Mississauga, Ontario L5H 3C5
Canada

Please also serve:

2180 Immokalee Road, Suite 212
Naples, Florida 34110

        Defendants

CIVIL CASE NO.:


THE HONORABLE
UNITED STATES DISTRICT JUDGE


THE HONORABLE
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| FTF LENDING, LLC, a Delaware limited liability company<br><br>　　　　　Plaintiff<br><br>vs.<br><br>SOUTHWEST DEVELOPMENTS, INC., a Florida corporation, and JASON MELOCHE, *aka* JASON A. MELOCHE, an individual and citizen of Canada<br><br>　　　　　Defendants | CIVIL CASE NO.:<br><br><br>THE HONORABLE<br>UNITED STATES DISTRICT JUDGE<br><br><br>THE HONORABLE<br>UNITED STATES MAGISTRATE JUDGE |

COMPLAINT FOR (1) BREACH OF NOTE DATED NOVEMBER 29, 2017, (2) BREACH OF
GUARANTY DATED NOVEMBER 29, 2017, AND (3) FORECLOSURE OF MORTGAGE
AND SECURITY AGREEMENT DATED NOVEMBER 29, 2017

73 7th Street, Bonita Springs, Florida 34134
(Parcel ID 24532960005)

Now comes the Plaintiff, FTF Lending, LLC, a Delaware limited liability company ("FTF" or "Lender"), by and through its undersigned counsel, and for its Complaint against Defendants, Southwest Developments, Inc., a Florida corporation ("SW Developments"), and Jason Meloche, *aka* Jason A. Meloche, an individual and citrizens of Canada ("Meloche"), states as follows:

PARTIES

1.　　The Plaintiff, FTF, is and was at all times mentioned below, a limited liability company organized and existing by virtue of the laws of the State of Delaware. The Plaintiff maintains a principal place of business at 10 East 23rd Street, Floor 5, New York, New York

10010.   The sole member of the Plaintiff is Fund That Flip, Inc., a corporation organized and existing by virtue of the laws of the State of Delaware.   The principal place of business of Fund That Flip, Inc. is 10 East 23rd Street, Floor 5, New York, New York 10010.   Accordingly, for diversity purposes, the Plaintiff is a citizen of the State of Delaware (state of incorporation and state of citizenship of sole member) and the State of New York (state of principal place of business).

2.       Upon information and belief, Defendant, SW Developments, is and was at all times mentioned below, a corporation organized and existing by virtue of the laws of the State of Florida.   Defendant, upon information and belief, maintains (a) an address for service of process in care of Philip R. Maiorca, Registered Agent, 2180 Immokalee Road, Suite 212, Naples, Florida 34110, and (b) a principal place of business at 2180 Immokalee Road, Suite 212, Naples, Florida 34110.   Accordingly, for diversity purposes, Defendant is a citizen of the State of Florida (state of incorporation) and the State of Florida (state of principal place of business).

3.       Upon information and belief Defendant, Meloche, is and was at all times mentioned below, an individual and citizen of Canada.   Defendant has an address for service of process at 1586 Glenhill Cres., Mississauga, Ontario, L5H 3C5, Canada.   Accordingly, for diversity purposes, Defendant is a citizen of Canada.

## JURISDICTION AND VENUE

4.       Jurisdiction exists in the judicial district comprising the Middle District of Florida pursuant to 28 U.S.C. § 1332(a) as there is complete diversity between all known parties and the matter in controversy exceeds the amount of $75,000.00 exclusive of interest and costs.

5.       Venue is proper in the judicial district comprising the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2) as (a) a substantial portion of events giving rise to the claims

of the Plaintiff, FTF, occurred within Collier County, Florida, and (b) the hereinafter-described Property is situated within Collier County, Florida.

BACKGROUND

6.     On November 29, 2017, Defendant, SW Developments, executed a certain commercial note (the "Note") dated November 29, 2017 in favor of FTF in the original principal amount of $320,000.00, plus interest on the unpaid principal balance.   Defendant delivered possession of the original Note to FTF.   A true and accurate copy of the Note is attached hereto as Exhibit A and incorporated herein by reference.

7.     On November 29, 2017, in order to secure repayment of the Note, Defendant, Meloche, executed a certain commercial guaranty (the "Guaranty") dated November 29, 2017 in favor of FTF.   Defendant delivered possession of the original Guaranty to FTF.   A true and accurate copy of the Guaranty is attached hereto as Exhibit B and incorporated herein by reference.

8.     On November 29, 2017, in order to further secure repayment of the Note, Defendant, SW Developments, executed a certain commercial mortgage and security agreement (the "Mortgage") dated November 29, 2017 in favor of FTF.   Defendant delivered possession of the original Mortgage to FTF.   A true and accurate copy of the Mortgage is attached hereto as Exhibit C and incorporated herein by reference.

9.     In the Mortgage, Defendant, SW Developments, granted, mortgaged, and conveyed to FTF and FTF's successors and assigns, with mortgage covenants, all of Defendant's right, title and interest in and to one (1) parcel of real property more commonly known as 73 7th Street, Bonita Springs, Florida 34134 (Parcel ID 24532960005) (the "Property") and more fully described as follows:

LOT 19, BLOCK 13, OF THAT CERTAIN SUBDIVISION KNOWN AS UNIT NO. 2 BONITA SHORES, ACCORDING TO THE MAP OR PLAT THEREOF ON FILE AND RECORDED IN THE OFFICE OF THE CLERK OF THE CIRCUIT COURT OF COLLIER COUNTY, FLORIDA, IN PLAT BOOK 3, PAGE 43.

Address:     73 7th Street, Bonita Springs, Florida 34134
Parcel ID:    24532960005

10.     FTF perfected the Mortgage by filing the Mortgage for record and recording the Mortgage on December 5, 2017 in the Office of the Clerk of the Circuit Court, Collier County, Florida as Instrument #5479285 (Official Records Book Volume 5455 at Page 880).

11.     FTF performed all conditions precedent required under the Note, the Guaranty, and the Mortgage since November 29, 2017.

12.     FTF has possession of the original Note, the original Guaranty, and the original Mortgage.

13.     Defendant, SW Developments, is the real owner of the Property under that certain Warranty Deed dated November 30, 2017 and recorded on December 5, 2017 in the Office of the Clerk of the Circuit Court, Collier County, Florida as Instrument #5479284 (Official Records Book Volume 5455 at Page 878).  A true and accurate copy of the vesting deed is attached hereto as Exhibit D and incorporated herein by reference.

COUNT ONE
Breach of the Note – Defendant, SW Developments

14.     For Count One of the Complaint, the Plaintiff, FTF, adopts, reaffirms and reincorporates all of the aforesaid allegations and statements as if fully rewritten herein.

15.     According to the terms of the Note, Defendant, SW Developments, agreed as follows:

1.     BORROWER'S PROMISE TO PAY.  In return for a loan made by Lender to Borrower secured by that certain Mortgage (as hereinafter defined),

Borrower promises to pay U.S. $320,000.00 (hereinafter the "Principal"), plus interest, to the order of Lender, in accordance with the terms of this Note. Borrower will make all payments under this Note in the form of check or federal funds transfer to an account designated by Lender or in such other manner as may be designated by Lender. Borrower understands that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is hereinafter called the "Note Holder."

2. <u>INTEREST</u>. Absent an Event of Default (as hereinafter defined), interest under this Note shall be due and payable at the "Applicable Interest Rate" (as hereinafter defined) for the period from the date hereof through the Maturity Date, as the same may be extended, or through the earlier prepayment of the Loan in full. The term "Applicable Interest Rate," as used herein, shall mean an interest rate equal to ten and seventy-five hundreths percent (10.75%) per annum. Interest for any month or fractional part thereof shall be calculated on the basis of a 30-day month and 360-day year, shall accrue and compound on a monthly basis, and shall be due and payable hereunder monthly.

3. PAYMENT TERMS.

   3.1. Borrower agrees to pay sums under this Note in installments as follows:

   (a) On the date hereof in the sum of One Hundred Ninety One and 11/100 Dollars ($191.11), representing interest only from the date of this Note through November 30, 2017.

   (b) Commencing on January 1, 2018 and on the first day of each month thereafter and until May 30, 2018 (the "Maturity Date"), Borrower shall pay to Lender monthly installments of interest only due in accordance with the terms of this Note[.]

   (c) All accrued and unpaid interest and the unpaid principal balance hereof are due and payable on the earlier to occur of (i) the Maturity Date, or (ii) the date on which the indebtedness becomes immediately due and payable hereunder.

   (d) Borrower shall have an option to extend the Maturity Date for one (1) three (3) month period from the Maturity Date (the "<u>Extension Term</u>"), for a fee payable to Lender equal to one percent (1%) of the Principal, provided that (i) there is no ongoing Event of Default under this Note or the Loan Documents and Borrower has delivered written notice to Lender that they wish to exercise such extension at least forty-five (45) days prior to the first day of the Extension Term. . . . The Maturity Date established by this Extension Term shall be known as the "Extended Maturity Date" . . . .

6.   DEFAULT AND ACCELERATION.

6.1. It is hereby expressly agreed that (A) the whole of the principal sum of this Note, (B) interest, default interest, late charges, fees and other sums, as provided in this Note, (C) all other monies agreed or provided to be paid by Borrower in this Note, the Mortgage or the Loan Documents, (D) all sums advanced pursuant to the Mortgage and/or the Loan Documents, and (E) all sums advanced and costs and expenses incurred by Lender in connection with the Indebtedness (as hereinafter defined) or any part thereof, any renewal, extension, or change of or substitution for the Indebtedness or any part thereof, or the acquisition or perfection of the security granted pursuant to the Mortgage and the other Loan Documents, whether made or incurred at the request of Borrower or Lender (the sums referred to in (A) through (E) above shall collectively be referred to as the "Indebtedness") shall, WITHOUT NOTICE (unless otherwise provided herein), become immediately due and payable at the option of the Note Holder upon the happening of any of the following events (each, an "Event of Default"):

(a)   Borrower fails to pay any amount due to Lender under this Note, as and when due;

(b)   Borrower fails to keep, observe or perform any other promise, condition or agreement contained in this Note, the Mortgage, the Loan Documents or any other documents described herein or delivered in connection herewith or is otherwise in default under the terms, covenants and conditions of this Note, the Mortgage and the Loan Documents, and such failure or default is not remedied within fifteen (15) days after written notice to Borrower thereof, provided, however, that if such failure or default is not capable of being cured or remedied within said fifteen (15) day period, then if Borrower fails to promptly commence to cure the same and thereafter diligently prosecute such cure to completion but in any event within thirty (30) days after notice thereof;

(c)   There is a material misstatement in any certificate and/or certification delivered in connection with this Note, the Mortgage, and other Loan Documents, or any representation, disclosure, warranty, statement, financial information, application and/or other instrument, record, documentation or paper made or furnished by or on behalf of Borrower in connection with this Note shall be materially misleading, untrue or incorrect as of the later of (i) the date hereof or (ii) when made[] . . .

(f)   Borrower or a member of Borrower shall have concealed, removed and/or permitted to be concealed or removed any substantial part of its property and/or assets with the intent to

hinder, delay or defraud Lender of any of its property and/or assets which may be fraudulent under any federal or state bankruptcy, fraudulent conveyance or similar law now or hereafter enacted, or if Borrower shall have made any transfer of any of its property and/or assets to or for the benefit of a creditor at a time when other creditors similarly situated have not been paid, or if Borrower shall have suffered or permitted to be suffered, while insolvent, any creditor to obtain a lien upon any of its property and/or assets through legal proceedings or distraint which is not vacated within 60 days from the date of entry thereof;

(g) Borrower defaults under any other note, instrument, agreement, contract, pledge, mortgage or encumbrance evidencing and/or securing the Indebtedness or any other indebtedness of Borrower to Lender, and such event or occurrence is not remedied or cured within ten (10) days after notice thereof or an "event of default" (as defined in such other note, instrument, agreement, contract, pledge, mortgage or encumbrance) shall have occurred[] . . .

7. DEFAULT INTEREST/LATE CHARGES.

7.1. From and after the occurrence of an Event of Default, regardless of whether or not there has been a notice of default issued by the Note Holder, interest shall accrue on the outstanding Principal Sum, and shall be payable, at a rate equal to twenty-four percent (24%) per annum (the "Default Rate"). The Default Rate shall remain in effect until any and all Events of Default shall have been cured. In addition, the Default Rate shall remain in effect during any period of default even upon the acceleration of the indebtedness evidence by this Note. The Default Rate shall be in effect at all times after the maturity of the Indebtedness (whether on the Maturity Date, by acceleration or otherwise). Upon acceleration or maturity, the Default Rate shall remain in effect until all sums due under this Note, the Mortgage and the Loan Documents shall have been paid in full. This clause, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Indebtedness, or as a waiver of any other right or remedy accruing to Lender by reason of the occurrence of any Event of Default.

7.2. Except for any payment of the Indebtedness after acceleration, if any payment (or part thereof) provided for herein shall not be made when due, a late charge of six ($0.06) cents for each dollar so overdue shall become immediately due and payable to the Note Holder as liquidated damages for failure to make prompt payment and the same shall be secured by the Mortgage. This fee is not a penalty but a fee reasonably calculated to reimburse the Note Holder for administrative and staff time. Such charge shall be payable in any event no later than the due date of the next subsequent installment or, at the option of Note Holder, may be deducted from any deposits

held by Lender as additional security for this Note.  Nothing herein is intended to or shall extend the due dates set forth for payments under this Note. Such late fee may be charged on any subsequent delinquent payment. . . .

8.   WAIVERS. . . .

8.4. BORROWER AND EACH ENDORSER AGREE THAT ANY ACTION, SUIT OR PROCEEDING IN RESPECT OF OR ARISING OUT OF THIS NOTE MAY BE INITIATED AND PROSECUTED IN THE STATE OR FEDERAL COURTS, AS THE CASE MAY BE, LOCATED IN THE COUNTY OF COLLIER, STATE OF FLORIDA.  BORROWER AND EACH ENDORSER CONSENT TO AND SUBMIT TO THE JURISDICTION OF SUCH COURTS OVER THE SUBJECT MATTER, WAIVE PERSONAL SERVICE OF ANY AND ALL PROCESS UPON IT AND CONSENT THAT ALL SUCH SERVICE OF PROCESS BE MADE BY REGISTERED OR CERTIFIED MAIL OR REPUTABLE OVERNIGHT DELIVERY SERVICE DIRECTED TO BORROWER OR SUCH ENDORSER AT ITS ADDRESS SET FORTH ABOVE OR TO ANY OTHER ADDRESS AS MAY APPEAR IN LENDER'S RECORDS AS THE ADDRESS OF BORROWER OR SUCH ENDORSER.

8.5. IN ANY ACTION, SUIT OR PROCEEDING IN RESPECT OF OR ARISING OUT OF THIS NOTE, BORROWER AND EACH ENDORSER WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN EVIDENCED BY THIS NOTE, THE APPLICATION FOR THE LOAN EVIDENCED BY THIS NOTE, THE MORTGAGE OR ANY OTHER LOAN DOCUMENT, OR ANY ACTS OR OMISSIONS OF NOTE HOLDER, ITS OFFICERS, EMPLOYEES, DIRECTORS OR AGENTS IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BORROWER AND EACH ENDORSER, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.

8.6. BORROWER AND EACH ENDORSER ALSO WAIVE (I) THE RIGHT TO INTERPOSE ANY SET-OFF OR COUNTERCLAIM OF ANY NATURE OR DESCRIPTION, OTHER THAN A MANDATORY OR COMPULSORY COUNTERCLAIM, (II) ANY OBJECTION BASED ON FORUM NON CONVENIENS OR VENUE, AND (III) ANY CLAIM FOR CONSEQUENTIAL, PUNITIVE OR SPECIAL DAMAGES. . . .

11.   MISCELLANEOUS. . . .

    11.3.    Wherever pursuant to this Note it is provided that Borrower pay any costs and expenses, such costs and expenses shall include, without limitation, reasonable legal fees and disbursements of Note Holder with respect to retained firms, but shall not include the reimbursement of the expenses of Note Holder's in-house staff or counsel.  Borrower shall pay to Note Holder on demand any and all expenses, including reasonable legal expenses and attorneys' fees, incurred or paid by Lender in enforcing this Note.

16.    Defendant, SW Developments, failed to pay any amount due to FTF under the Note within ten (10) days after the due date for such payment.  Specifically, Defendant failed to pay FTF the (a) interest-only installment due on July 1, 2018, (b) interest-only installment due on August 1, 2018, (c) late charge incurred in April 2018 for March 1, 2018 interest-only installment, (e) late charge incurred in May 2018 for April 1, 2018 interest-only installment, (f) late charge incurred in June 2018 for May 1, 2018 interest-only installment, (g) late charge incurred in July 2018 for June 1, 2018 interest-only installment, (h) extension fee incurred in May 2018, and (i) the extended maturity date payment due on August 29, 2018 respectively (collectively, the "Note Default").

17.    The Note Default constitutes an event of default under the terms of the Note, the Guaranty, and the Mortgage.

18.    On September 17, 2018, the Plaintiff, FTF, mailed a written notice of default (the "Notice of Default") to Defendant, SW Developments.  The Notice of Default notified Defendant of the Note Default and provided Defendant with a cure period.  A true and accurate copy of the Notice of Default is attached hereto as Exhibit E and incorporated herein by reference.

19.    Defendant, SW Developments, failed to cure the Note Default during the cure period.

20.    As of December 31, 2018, Defendant, SW Developments, owes the Plaintiff,

FTF, the total sum of $291,377.40 [unpaid principal of $320,000.00, less remaining construction budget of $64,900.00, plus the extension fee of $3,200.00, late charges of $1,376.00, accrued and unpaid contract interest of $17,200.02, accrued and unpaid default interest of $14,251.38, and the payoff preparation and processing fee of $250.00], plus per diem interest in the sum of $213.34 from January 1, 2019 and thereafter, and all other amounts recoverable under the Note (the "Note Balance").

WHEREFORE, the Plaintiff, FTF, respectfully requests the following relief upon Count One of the Complaint:

    a.    Judgment in favor of the Plaintiff, FTF, and against Defendant, SW Developments, in the amount of the Note Balance; and

    b.    such further relief as the Plaintiff, FTF, may be entitled to in equity or at law and/or as this Honorable Court deems just and proper.

COUNT TWO
Breach of the Guaranty – Defendant, Meloche

21.    For Count Two of the Complaint, the Plaintiff, FTF, adopts, reaffirms, and reincorporates all of the aforesaid allegations and statements as if fully rewritten herein.

22.    According to the terms of the Guaranty, Defendant, Meloche, agreed as follows:

2.    AGREEMENT TO GUARANTEE.

    2.1. Obligations Guaranteed.

    (a) Guarantor hereby irrevocably and unconditionally guarantees to Lender the full and prompt:

    (1) payment when due of the principal, interest and other sums due with respect to the loan, whether now existing or hereafter incurred (including any increase in the indebtedness under the Loan Documents), and all other obligations whenever incurred by Borrower to Lender with respect to the loan and under or through the Loan Documents, when and as the same shall become due and payable, whether at the stated maturity thereof, by acceleration, or otherwise; and

(2) payment and performance of all other obligations of Borrower under the Loan Documents, including, without limitation, the full and indefeasible payment and performance when due of all now existing or future indebtedness, obligations or liabilities of Borrower to Lender, howsoever arising, whether direct or indirect, absolute or contingent, secured or unsecured, whether arising under any of the Loan Documents as now written or as the same may be amended or supplemented hereafter, or by operation of law or otherwise.  Payments by Guarantor shall be made upon demand in the lawful money of the United States of America.

(b) Each and every default in the payment of the principal or interest or any other sum due under, or borrowing in accordance with, the Loan Documents shall give rise to a separate cause of action hereunder, and separate suits may be brought hereunder as each cause of action arises.

(c) Guarantor further agrees that this Guaranty constitutes an absolute, unconditional, present and continuing <u>GUARANTEE OF PAYMENT AND PERFORMANCE AND NOT OF COLLECTION</u>, and Guarantor waives any right to require that any resort be had by Lender to:

(1) any security (including, without limitation, the Collateral) held by Lender or for its benefit for payment of the principal, interest or any other sums due under the Loan Documents; or

(2) Lender's rights against any other person including Borrower or any other guarantor of the loan; or

(3) any other right or remedy available to Lender by contract, applicable law or otherwise.

It is the intent of this Guaranty that Lender shall have the right to resort to Guarantor without resorting to any remedy against Borrower and without demand by it, as though Guarantor is primarily liable for the repayment of the indebtedness.

2.2. <u>Obligations Unconditional</u>.  The obligations of Guarantor under this Guaranty shall be absolute and unconditional and shall remain in full force and effect until the entire principal, interest and all other sums due under the Loan Documents have been paid in full (subject to the provisions of Section 2.7 hereof) and all costs and expenses, if any, referred to in Section 2.4 hereof shall have been paid in full. . . .

2.3. <u>No Waiver of Set-Off; No Right to Jury Trial</u>.  No act of commission or

omission of any kind or at any time made by or upon the part of Lender, or its successors and assigns, in respect of any matter whatsoever shall in any way impair the rights of Lender, or any such successor or assign, to enforce any right, power or benefit under this Guaranty and no set-off, counterclaim (other than a mandatory or compulsory counterclaim), reduction or diminution of any obligation, or any defense of any kind or nature which Guarantor has or may have against Lender, or any assignee or successor thereof, shall be available hereunder to Guarantor in respect of any matter arising out of this Guaranty.   GUARANTOR WAIVES TRIAL BY JURY IN ANY ACTION, SUIT OR PROCEEDING IN RESPECT OF, OR ARISING OUT OF, THIS GUARANTY OR THE OBLIGATIONS OF GUARANTOR HEREUNDER.   THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY GUARANTOR AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.

2.4. Waiver of Notice; Expenses.

(a) Guarantor hereby expressly waives notice from Lender of its acceptance and reliance on this Guaranty. Guarantor agrees to pay all costs, fees, commissions and expenses (including, without limitation, all reasonable attorneys' fees) which may be incurred by Lender in enforcing or attempting to enforce this Guaranty, whether the same shall be enforced by suit or otherwise.

3.   NOTICE OF SERVICE OF PROCESS PLEADINGS AND OTHER PAPERS. . . .

3.2. Consent of Jurisdiction.   Guarantor irrevocably and unconditionally:

(a) agrees that any suit, action or other legal proceeding arising out of this Guaranty may be brought in the courts of record of the State of Florida or any Federal court in Florida, and that such courts shall have in personam jurisdiction of Guarantor in any such suit, action or other legal proceeding; and

(b) consents to the jurisdiction of each such court in any such suit, action or other legal proceeding; and

(c) waives any objection which it may have to the laying of venue of any such suit, action or proceeding in any of such courts.

23.    The Note Default constitutes an event of default under the terms of the Note, the

Guaranty, and the Mortgage.

24.    On September 17, 2018, the Plaintiff, FTF, mailed the Notice of Default to

Defendant, Meloche.  The Notice of Default notified Defendant of the Note Default and provided Defendant with a cure period.  *See* Exhibit E.

25.     Defendant, Meloche, failed to cure the Note Default during the cure period.

26.     As of December 31, 2018, Defendant, SW Developments, owes the Plaintiff, FTF, the total sum of $291,377.40 [unpaid principal of $320,000.00, less remaining construction budget of $64,900.00, plus the extension fee of $3,200.00, late charges of $1,376.00, accrued and unpaid contract interest of $17,200.02, accrued and unpaid default interest of $14,251.38, and the payoff preparation and processing fee of $250.00], plus per diem interest in the sum of $213.34 from January 1, 2019 and thereafter, and all other amounts recoverable under the Guaranty (the "Guaranty Balance").

WHEREFORE, the Plaintiff, FTF, respectfully requests the following relief upon Count Two of the Complaint:

  a. Judgment in favor of the Plaintiff, FTF, and against Defendant, Meloche, in the amount of the Guaranty Balance; and

  b. such further relief as the Plaintiff, FTF, may be entitled to in equity or at law and/or as this Honorable Court deems just and proper.

COUNT THREE
Breach of the Mortgage
Defendants, SW Developments

27.     For Count Three of the Complaint, the Plaintiff, FTF, adopts, reaffirms, and reincorporates all of the aforesaid allegations and statements as if fully rewritten herein.

28.     According to the terms of the Mortgage, Defendant, SW Developments, agreed as follows:

  D. EVENTS OF DEFAULT

    1. Events of Default.  Each of the following events will constitute an "Event of Default" under this Mortgage:

(a) Mortgagor fails to pay any amount due to Mortgagee under the Note or under this Mortgage as and when due; . . .

(c) Mortgagor fails to keep, observe or perform any other promise, condition or agreement contained in this Mortgage or the Note, or any other documents described herein or therein or delivered in connection herewith or therewith, and such failure is not remedied within fifteen (15) days after written notice to Mortgagor thereof, provided, however, that if such failure is not capable of being cured or remedied within said fifteen (15) day period, then if Mortgagor fails to promptly commence to cure the same and thereafter diligently prosecute such cure to completion within thirty (30) days after written notice thereof; . . .

(t) Any of the events enumerated in this Section shall happen to any Guarantor or any of its property, and such event or occurrence is not remedied or cured within thirty (30) days after written notice thereof; . . .

(x) Any Event of Default occurs under the Note or Other Loan Document.

E.   REMEDIES OF MORTGAEE.   Upon the occurrence of an Event of Default, Mortgagee possesses certain rights and remedies, among which are the following:

1.   Failure of Mortgagor to Comply with this Mortgage.  Upon the occurrence of an Event of Default, Mortgagee may (a) take whatever action Mortgagee deems necessary to protect the security of this Mortgage, including enter upon the Premises for such purposes; (b) pay, purchase, contest or compromise any encumbrance, charge or lien which Mortgagee deems to be superior to this Mortgage and (c) perform such act or pay such charge on behalf of Mortgagor. Mortgagee has no obligation to take any such actions and, if it chooses to take action, may do so without notice or demand upon Mortgagor and without releasing Mortgagor from any obligation under this Mortgage. If Mortgagee takes any such action, Mortgagor agrees to repay immediately upon demand, any amounts expended by Mortgagee plus interest at the rate set forth in the Note, which amounts plus interest shall be secured by this Mortgage.

2.   Mortgagee's Right to the Appointment of a Receiver.

(a) If Mortgagee initiates an action to foreclose on this Mortgage or in the event of any actual or threatened waste to any part of the Premises, Mortgagee will be entitled to have the court appoint a receiver. The receiver may be appointed without Mortgagee giving notice to Mortgagor thereof and without regard to the value of the Premises as security for the indebtedness secured hereby, or the solvency or insolvency of any person then liable for the payment of the indebtedness.

(b) Following an Event of Default, a receiver for the Premises may be appointed upon the application of Mortgagee, which application Mortgagor hereby agrees not to contest. Mortgagee or any receiver of the Premises may at any time or from time to time, in its or his/her

discretion, make advances to effect performance of such covenant on behalf of Mortgagor; and all monies so advanced by Mortgagee or such receiver, together with interest thereon, shall be deemed a part of the Indebtedness secured by the lien of this Mortgage. . . .

8. <u>Foreclosure by Mortgagee; Other Remedies.</u>

   (a) <u>Foreclosure-Power of Sale.</u> In all events subject to the requirements of applicable law, Mortgagee may institute a proceeding or proceedings, judicial, or non-judicial, by advertisement or otherwise, for the complete or partial foreclosure of this Mortgage or any Security Agreement or the complete or partial sale of the Premises under power of sale or under any applicable provision of law. Mortgagee may sell the Premises, and all estate, right, title, interest, claim and demand of Mortgagor therein, and all rights of redemption thereof, at one or more sales, as an entirety or in parcels, with such elements of real and/or personal property, and at such time and place and upon such terms as it may deem expedient, or as may be required by applicable law, and in the event of a sale, by foreclosure or otherwise, of less than all of the Premises, this Mortgage shall continue as a lien and security interest on the remaining portion of the Premises. . . .

10. <u>Mortgagee's Judicial Remedies.</u> Mortgagee may proceed by suit or suits, at law or in equity, to enforce the payment of the Indebtedness to foreclose the liens and security interests of this Mortgage as against all or any part of the Premises, and to have all or any part of the Premises sold under the judgment or decree of a court of competent jurisdiction. This remedy shall be cumulative of any other non-judicial remedies available to Mortgagee under this Mortgage, the Note or the Other Loan Documents. To the fullest extent permitted by law, proceeding with a request or receiving a judgment for legal relief shall not be or be deemed to be an election of remedies or bar any available non-judicial remedy of Mortgagee. . . .

17. <u>Mortgagee's Costs and Expenses; Legal Fees.</u>

   (a) If any action or proceeding is commenced (including, without limitation, any action under any federal or state bankruptcy or insolvency law, or any similar law) by or against Mortgagee, including an action to foreclose this Mortgage or to enforce, declare  or adjudicate any rights or obligations under this Mortgage or the Note affecting the Premises or the lien created hereby, or if any action or proceeding is commenced (except an action to foreclose this Mortgage or to collect the Indebtedness) to which action or proceeding Mortgagee is made a party, Mortgagee may appear, defend, prosecute, retain counsel and take such action as Mortgagee shall deem advisable, and the costs thereof (including, without limitation, reasonable attorneys' fees and expenses and all applicable statutory costs, allowances and disbursements), together with interest thereon at the Applicable Interest Rate (or the Default Rate after and  during the continuance of an Event of Default) , shall be paid by Mortgagor to Mortgagee on demand. All of the aforementioned amounts plus interest thereon shall be a lien on the Premises, prior to any right,

title or interest in or claim upon the Premises attaching or accruing subsequent to the lien of this Mortgage, and shall be deemed to be secured by this Mortgage.

(b) Mortgagor agrees to bear all reasonable expenses (including reasonable attorneys' fees for legal services of every kind including fees to foreclose this mortgage) of or incidental to the enforcement of any provisions hereof, or enforcement, compromise, or settlement of any other collateral pledged hereunder, and for the curing thereof, or defending or asserting the rights and claims of Mortgagee in respect thereof, by litigation or otherwise, and will pay to Mortgagee any such expenses reasonably incurred, and such expenses shall be deemed an indebtedness secured by this Mortgage and shall be collectible in like manner as the principal indebtedness secured by this Mortgage. . . .

G. <u>Miscellaneous</u>. . . .

6. <u>Attorney's Fees for Enforcement</u>.   (a) Mortgagor shall pay all reasonable legal fees incurred by Mortgagee in connection with (i) subject to the prior agreement of the parties, the preparation of the Note, this Mortgage and the Other Loan Documents and (ii) the items set forth in Section G(5) above, and (b) Mortgagor shall pay to Mortgagee on demand any and all expenses, including reasonable legal expenses and attorneys' fees, reasonably incurred or paid by Mortgagee in protecting its interest in the Premises or in collecting any amount payable hereunder or in enforcing its rights hereunder with respect to the Premises, whether or not any legal proceeding is commenced hereunder or thereunder and whether or not any default or Event of Default shall have occurred and is continuing, together with interest thereon at the Default Rate from the date paid or incurred by Mortgagee until such expenses are paid by Mortgagor. . . .

15. <u>Waiver of Trial by Jury</u>.  Mortgagor hereby waives all rights to trial by jury in any action, proceeding, claim or counterclaim arising out of this Mortgage.

29.     In order to protect the lien and security of the Mortgage during the pendency of the within action, the Plaintiff, FTF, may be required to pay insurance premiums, real estate taxes, assessments, water charges, sewer charges, attorneys' fees, repairs and other expenses or charges affecting the Property.  The Plaintiff requests that any amount so paid and expended by the Plaintiff during the pendency of the within action be added, pursuant to the terms of the Mortgage, to Plaintiff's claim and be repaid to the Plaintiff from the proceeds of the sale of the

Property, together with interest thereon from the date such expenditures are made and that the same be added to the amounts due to the Plaintiff and secured by the Mortgage.

WHEREFORE, the Plaintiff, FTF, respectfully requests the following relief upon Count Three of the Complaint:

a.   Judgment of foreclosure and sale of the Mortgage in favor of the Plaintiff, FTF, and against Defendant, SW Developments; and

b.   an Order fixing the total amount due under the terms of the Mortgage, together with interest, costs, collection expenses, including reasonable attorneys' fees, and all other amounts recoverable under the Mortgage; and

c.   an Order (i) requiring all Defendants to answer as to their respective claims, encumbrances, interests and/or liens, if any, in and to the Property, or forever be barred, and (ii) barring and foreclosing the equity of redemption of Defendant, SW Developments, in and to the Property; and

d.   an Order (i) marshalling all claims, encumbrances, interests and/or liens in and to the Property, and (ii) determining the priorities of all Parties to the within action; and

e.   an Order adjudging the Property be sold according to law and Order(s) of this Honorable Court to satisfy the total amount due to the Plaintiff, FTF, under the terms of the Mortgage; and

f.   Judgment for any deficiency balance remaining under the Mortgage following the judicial foreclosure sale of the Property; and

g.   Judgment for the costs and collection expenses, including reasonable attorneys' fees, pursuant to the terms of the Mortgage; and

h.   such further relief as the Plaintiff, FTF, may be entitled to in equity or at law and/or as this Honorable Court deems just and proper.

Respectfully submitted by:

*s/ Christopher A. Walker*

CHRISTOPHER A. WALKER, ESQUIRE
Florida Attorney Registration #114793
Lippes Mathias Wexler Friedman LLP
822 US Highway A1AN, Suite 100
Ponte Vedra Beach, Florida 32082
Telephone: (904) 660-0020
Facsimile: (904) 660-0029
E-Mails: cwalker@lippes.com
           sobrien@lippes.com

Michael J. Palumbo, Esquire
(*Motion to Appear Pro Hac Vice to Be Filed*)
Anthony J. Gingo, Esquire
(*Motion to Appear Pro Hac Vice to Be Filed*)
Gingo Palumbo Law Group LLC
Summit One
4700 Rockside Road, Suite 440
Independence, Ohio 44131
Telephone: (216) 503-9512
Facsimile: (888) 827-0855
E-Mails: michael@gplawllc.com
           anthony@gplawllc.com

*Counsel for the Plaintiff*